# CHARLESTON.

### HALL *v.* WILLIAMSON GROCERY CO.

Submitted March 18, 1910. Decided November 7, 1911.

1. MORTGAGES—*Priority—Record.*
    The mere recordation of a, subsequent deed of trust is not notice to the holder of a prior one which has been duly recorded. (p. 674).

2. SAME—*Priority—Notice Affecting Priority.*
    The holder of a duly recorded deed of trust to secure future advances is affected only by actual notice of a lien subsequently

acquired on the property, and for all advances made by him under his deed of trust and within its terms before receiving actual notice of a subsequent lien, his deed of trust is a valid and prior security.  (p. 674).

3.  SAME.

Knowledge by one secured under a deed of trust for future advances that his trust debtor intends to give a subsequent deed of trust to another creditor does not affect his security for advances made before he has notice of the actual execution of the subsequent deed of trust.  (p. 675).

Appeal from Circuit Court, McDowell County.

Suit by Geo. P. Hall & Co. against the Williamson Grocery Company and another.  From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*J. Powell Royall,* for appellants.

*M. O. Litz,* for appellees.

ROBINSON, JUDGE:

Sadie Price and husband executed a deed of trust, covering a town lot, to secure Williamson Grocery Company in a sum not to exceed eight hundred dollars for any and all future sales and deliveries of goods which should be made to her by the company within the period of two years.  Some months later, the Prices conveyed a portion of this lot to Graves in consideration of seven hundred dollars cash.  This amount was paid to the Grocery Company on an indebtedness of several hundred dollars that had arisen to it from Sadie Price for goods sold and delivered. In consideration of this payment, the Grocery Company released the deed of trust so far only as it affected the portion of the lot sold to Graves.  At about this time the Prices executed another deed of trust on the remaining portion of the lot to secure Geo. P. Hall & Company, plaintiffs in this suit, the payment of a bond for $251.51.  When the deed of trust to secure plaintiffs was made and recorded, the prior deed of trust to secure the Grocery Company, covering the identical property, had long been of record and as to that property was wholly·unreleased.

When the Grocery Company sought to enforce its deed of trust, claiming an indebtedness in default thereunder, and the

trustee had advertised a sale, plaintiffs brought this suit against the Grocery Company and the trustee. The bill alleges in substance that the seven hundred dollars received by the Grocery Company from Graves settled all indebtedness due under the deed of trust at the time that sum was received; that the indebtedness secured was then fully satisfied and the lien should have been released; that the Grocery Company had actual knowledge of plaintiff's deed of trust at the time the same was executed; and that plaintiff's deed of trust constituted a first lien on the property, in priority to any lien of the Grocery Company. Plaintiffs prayed that an enforcement of the deed of trust in behalf of the Grocery Company be enjoined, and that their debt be decreed to be a lien on the property taking priority over any indebtedness claimed by the Grocery Company.

A temporary injunction was awarded, the answer of the Grocery Company denying the material allegations of the bill was filed, depositions were taken, and the case was heard on its merits. The chancellor denied the relief which plaintiffs sought. The decree appealed from dissolved the injunction and dismissed the bill.

If, at the time the subsequent deed of trust was made to secure plaintiff's debt, there was nothing due the Grocery Company from Sadie Price for goods sold and delivered under the first deed of trust, and the Grocery Company had actual notice of the subsequent lien, then claims for future advances made by the Grocery Company after that notice could not take priority of lien over the sum secured in plaintiffs' deed of trust. Under those circumstances plaintiffs would have the right to enjoin a trustee's sale which had for its object the payment of the Grocery Company claims in preference to theirs.

The evidence, however, does not sustain the case urged by plaintiffs. The chancellor was justified in holding that the Graves payment did not wholly pay off the first deed of trust at the time the payment was made; that a considerable sum still remained under the security of the deed of trust; that many other advances were made thereafter by the Grocery Company on the faith of its deed of trust and within the terms thereof; and that the Grocery Company did not have notice of plaintiffs' subsequent lien before making the future advances which it now

claims as secured by the prior deed of trust in its favor. The
mere recordation of the subsequent deed of trust was not notice
to the holder of the prior one. Actual notice was necessary; yet
actual notice that the subsequent deed of trust was duly and
finally executed is not brought home to the holder of the prior
lien. Plaintiffs did attempt to prove actual notice; but the evi-
dence they offered in this particular does not prove the fact.
That evidence goes no further than to show that the husband of
Sadie Price told a travelling salesman of the Grocery Company
that a subsequent deed of trust to plaintiffs was contemplated.
Price says he told the salesman, on January 23rd, either that
the deed of trust to plaintiffs was given or that it would be given.
The deed of trust referred to was not executed until February
6th. So on the former day he could not have told the salesman
that the deed of trust was given, for it was not then given. He
must have stated the true one of the two facts the one or the
other of which he says he may have stated; that is, merely that a
deed of trust would be given to plaintiffs in the future. Even
if the salesman was an agent of the Grocery Company of such
character that notice to him was notice to it, a question we need
not decide, the simple statement that a deed of trust in favor
of plaintiffs would be given in the future was not actual notice
of the due and final execution of the lien. The Grocery Com-
pany had a right to rely on its prior and unreleased deed of
trust and to make advances on the faith of security thereunder,
until a subsequent lien was indeed placed on the property,
though it knew of an intention on the part of its debtor to ex-
ecute a subsequent lien. *Craig* v. *Tappin,* 2 Sandf. 78. The
burden rested on plaintiffs to stop advances under the prior
deed of trust by notice to the holder thereof that a lien in their
favor had attached to the property. In any view, evidence that
a thing is intended is not evidence that the thing exists.

Quite applicable and controlling in this case is the following
quotation from a standard authority: "When a mortgage to se-
cure future advances reasonably states the purpose for which it
is given, its record is a constructive notice to subsequent pur-
chasers and encumbrancers; they are thereby put upon an in-
quiry to ascertain what advances or liabilities have been made
or incurred. The record of a subsequent mortgage or convey-

ance, or the docketing of a subsequent judgment, is not a constructive notice of its existence to such prior mortgagee.    The prior mortgage, therefore, duly recorded, has a preference over subsequent recorded mortgages or conveyances, or subsequent docketed judgments, not only for advances previously made, but also for advances made after their recording or docketing without notice thereof.    As the record of the second encumbrance does not operate as a constructive notice, it requires an actual notice to cut off the lien of the prior mortgage; and the subsequent encumbrancer may, by giving actual notice, at any time prevent further advances from being made to his own prejudice."    3 Pomeroy's Equity Jur., (3rd ed.), sec. 1199.

Another eminent author discusses the same subject:    "A prior mortgagee is affected only by actual notice of a subsequent mortgage, and not by constructive notice from the recording of the second mortgage, and for all advances made by such mortgagee before receiving such notice of a subsequent incumbrance his mortgage is a valid security.    Such, it is conceived, is the rule supported by reason and the weight of authority. * * * * Whether the mortgage intended to secure future advances discloses the nature of the transaction or not, there is no good reason why it should not remain a valid security for all advances that may be made until the mortgagee receives actual notice of subsequent claims upon the property.    The burden of ascertaining the amount of an existing incumbrance should rest upon him who takes a conveyance on the property subject to the mortgage.    He has notice by the record of the existence of a mortgage for the full amount of the intended advances; and if he wishes to stop the advances where they are at the time of recording his subsequent deed, it is only reasonable to require him to give actual notice of his claim upon the property; otherwise he should not be heard to complain that the prior incumbrance amounts at any future time to the full sum for which it appeared of record to be an incumbrance."    Jones on Mortgages, (6th ed.), sec. 372.

Plaintiffs, when they obtained their lien, failed to protect themselves against the rights of the Grocery Company under its deed of trust, though they were bound to take notice thereof by the record.    They took their subsequent lien subject to all rights

that had accrued and could thereafter lawfully accrue under the prior deed of trust. The Grocery Company has shown that an indebtedness was secured by its deed of trust at the time plaintiffs took a subsequent lien on the property. It has also shown that advances since that time have become secured to it by the force of its deed of trust, unaffected by the lien of plaintiffs. Thus the fact appears that the aggregate of the indebtedness existing when plaintiffs took their lien and the advances made since that time without notice, the fixed sum of which is shown in the record, constitutes a first lien on the property. Since the Grocery Company is entitled to a first lien on the property, for a definite sum, the decree permitting it to proceed with the enforcement of that lien is clearly right. Plaintiffs have no right to stay a sale by the holder of the legal title on the facts appearing in this case. They have nothing by their deed of trust but the mere equity of redemption. They show no proper cause for equitable interference with the trustee's sale. The decree will be affirmed.

*Affirmed.*